## Liberty Coal Company v. Baker et ux.

(Decided November 19, 1929.)

762

JESSE MORGAN and F. J. EVERSOLE for appellants.

H. C. FAULKNER, B. P. WOOTTON, and E. C. WOOTON for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

In the year 1887, T. P. Trigg, as trustee, took deeds for the minerals in a large body of land in Perry county. This title as to the land in controversy passed by proper conveyances to the Virginia Iron Coal & Coke Company, and it on June 25, 1917, leased to the Liberty Coal Company 1,500 acres of the land lying between First and Second creek and including a tract conveyed by Andrew Milam and wife to Trigg, trustee, on July 20, 1887. The Liberty Coal Company entered on the property; spent $150,000 in putting up tipples, tracks, houses, etc., and opened a mine and began getting out coal in 1923. On January 14, 1926, Ira Baker and wife brought this action against it, alleging that they owned two separate tracts of 6 acres each and that the coal company had taken out the coal under their land of value $50,000. They prayed that their title be quieted and judgment for the value of the coal taken. The issues were made up; a large mass of proof was taken; on final hearing, the court adjudged Baker and wife to be the owners of the land claimed by them and gave them judgment against the coal company for $25,000 for the coal taken. The coal company appeals.

Andrew Milam bought the land he held from William Eversole about the year 1885; for the proof shows that he lived there five years and left there in 1890, when he sold this tract and moved to another. He held under a title bond, but had paid the purchase money. Appellees also claim under William Eversole by reason of a deed made by him later to Absolam Eversole under which they claim. So the first question to be decided is what land was included in the deed from Milam and wife to Trigg, trustee, by these words: "Our farm containing eighty-one acres, situated on the waters of Second Creek north

Fork of Kentucky River in the County of Perry, State of Kentucky, being my land and adjoining the lands of Irvine Eversole and others."

The evidence is undisputed that, when this deed was made, Milam was living in the house at the mouth of Sugar Camp branch with his family and claiming the land there as his own. As to what he bought and held, the widow of William Eversole testifies as follows:

"Q. What is your best recollection as to whether you and your husband did sign any writings, and was it a deed or bond, or what? A. I believe we signed something, I won't be sure about it's been so long.

"Q. Do you remember the boundary of land that your husband sold Andrew Milam? A. Yes, sir, just the Sugar Camp Branch."

William Fugate, a neighbor, testifies as follows:

"Q. I believe you have already said that Andrew Milam at one time lived there at the mouth of this Sugar Camp Branch? A. He lived there close on the branch.

"Q. Do you know whether or not Andrew Milam claimed to own some land there where he lived about the mouth of this Sugar Camp Branch? A. Yes, sir, he claimed to own the Sugar Camp Branch.

"Q. Do you know who he claimed to have got the land from on Sugar Camp Branch? A. He claimed that he got it from Billy Eversole and Irvin Eversole I think.

"Q. Do you know whether Andrew Milam had any writings from Billy Eversole? A. Why he claimed he had a writing from Billy Eversole and Bill Stacy."

William Eversole owned a tract of 600 acres lying on Second creek, beginning on the creek and running to the top of the ridge between Second and First creek, "thence up the ridge to a point on upper side of Sugar Camp Branch, thence down the point to the mouth of Sugar Camp Branch, thence with the creek," etc. This line was well marked, and the marks were old. This tract therefore clearly included Sugar Camp branch. The house in which William Eversole lived was on Second creek below Sugar Camp branch.

On July 28, 1890, Wm. Eversole conveyed to E. H. Patterson, trustee, "in fulfillment of Andrew Milam's bond for title," reciting that the purchase money was all paid, a certain tract of land containing 55½ acres "embraced in patents No. 14755 and a 1500 acre survey of date of patent January 25, 1848."

The lines of this deed follow the lines of the 1,500-acre patent, and do not include two little tracts of 6 acres lying within the ridge on either side of Sugar Camp branch and outside of the lines of the patent. These two tracts are the land on which are the minerals here in controversy. The situation is roughly illustrated in the following map, on which line 1, 2, 3, represents Second creek; 4, 5, 6, the ridge between it and First creek; 2, 7, Sugar Camp branch; 8, 5, 10, 9, the 1,500-acre patent; 11, 14, and 12, 13, the ridges on either side of Sugar Camp and A and B the land in controversy:

William Eversole's house was near 3. He held under his deed to the top of the ridge on the upper side of Sugar Camp. He apparently sold to Milam the upper end of his farm. So far as appears, nothing was then known as to the location of the patent line. His deed called for the top of the ridge, and the line was well marked. It cannot be presumed that he, in selling to Milam, intended to keep 6 acres of land separated from him by the land he was selling to Milam. In the parlance of Eastern Kentucky forty years ago, to buy a branch meant to buy the land up to the top of the ridge

on either side of the branch. The ridges there are high and steep. The top is narrow and clearly shown. There is no level land on top of the ridge. In crossing a ridge, when you get to the top, if you go ahead, you go right down on the other side. The top of the ridge is a well-defined natural boundary.

In the deed to Patterson where it leaves the Williams survey, the call is for a beech, "a line tree of the conditional line between Andrew Milam and Ab Eversole;" William Eversole having before 1890 sold to Ab Eversole the land lying below that sold Milam, and this conditional line follows the ridge. In 1902 the Virginia Iron Coal & Coke Company had its several tracts surveyed. The surveyor's report shows that he ran off the Milam tract by running the top of the ridge between Second and First creek and then ran down the ridges on either side of Sugar Camp branch, making the whole area 64.9 acres. This report shows that Ab Eversole pointed out the lines to the surveyor, and there was never any trouble with him or his immediate vendees. Patterson and his vendees also admitted the title to the mineral to be in the Virginia Coal & Iron Company within the lines shown by its survey along the top of the ridges.

Patterson took all his deeds calling for the patent lines and this rule of his naturally led to his deed, not including the two 6-acre tracts in question. There is no showing that Milam did not claim to William Eversole's marked line on top of the ridges to which he and those under whom he held had claimed for thirty years.

On July 13, 1891, William Eversole and wife conveyed by deed to Ab Eversole 400 acres of land adjoining Patterson and calling for his line; but the description concludes with these words, "Exempting therefrom the mineral right," thus clearly recognizing that the mineral had been conveyed by the prior deed of Milam to Trigg, trustee.

Ab Eversole and wife, by deed dated March 30, 1906, conveyed to Sam Grigsby and wife two boundaries of land. Following the description of the first tract are these words:

"The grantors herein acquired title to the above described tract of land as follows, by deed from William Eversole and wife bearing date the 15th

day of July 1891, recorded in Deed Book 'J' page 445, Perry County Court Clerk's office.

"2d tract. Also the right title and interest we have in the land on the Sugar Camp Branch of Second Creek which interest the grantors herein acquired as follows: by above deed from William Eversole and wife."

The only property conveyed by this deed is that conveyed to the grantors by the deed referred to, and that deed expressly reserved from its operation the mineral right. The mineral right threfore did not pass by this deed, which is the source of appellees' titie. They have no better title than their vendor, Grigsby, had. The mineral right is the only thing here in controversy. Appellees are the plaintiffs in the action, and must recover on the strength of their own title. Appellees show that Ab Eversole had sold the mineral under his land which was taken by William Eversole, and that this was perhaps the reason why the latter excepted the minerals in his deed. But the reason is immaterial. The fact is he did except the minerals, and appellees claim under this deed, which does not include the minerals. It is true that, by a deed acknowledged November 19, 1897, and recorded December 22, 1897, William Eversole conveyed to Ab Eversole 150 acres of land, but this deed is not referred to in the deed which the latter made to Grigsby, and the latter is expressly limited to the land conveyed to him by the deed of July 15, 1891. The second deed was made for other reasons. The conduct of the parties, as well as the form of the deed, strongly confirms the testimony for appellant that the first boundary in this deed does not include the land on Sugar Camp branch, here in controversy; the court cannot extend the language of the deed from Ab Eversole to Grigsby and so make it include any land other than plainly stated in its express terms.

The deeds under which both parties claim thus lead to the same conclusion. The minerals in the tract as surveyed in 1902 were sold by Milam to Trigg, for this was Milam's farm, as he supposed of 81 acres. All the neighborhood knew it. All the parties then recognized the title of Trigg and his vendees. Nobody disputed this until appellees got their deed on Septmber 10, 1925, when appellant had opened the mine and was about to get out the coal.

The evidence utterly fails to show a continuous adverse possession of any part of the land by appellees, or those they claim under for fifteen years; although Hardin Collins may have cleared some of the land more than fifteen years before the suit was brought, the proof fails to show a continuous possession for fifteen years.

Judgment reversed, and cause remanded for a judgment dismissing the plaintiffs' petition with cost.